FILED
2014 Jul-08 PM 04:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **WESLEY TOBIN HUTTO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 5:13-CV-805-VEH** |
| | ) | |
| **CAROLYN W. COLVIN, ACTING** | ) | |
| **COMMISSIONER, SOCIAL** | ) | |
| **SECURITY ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | | |

---

## MEMORANDUM OPINION

### INTRODUCTION

Plaintiff Wesley Tobin Hutto brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. He seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied his application for Disability Insurance Benefits ("DIB"). Mr. Hutto timely pursued and exhausted his administrative remedies available before the Commissioner. The case is thus ripe for review under 42 U.S.C. § 405(g). For the following reasons, the court **AFFIRMS** the Commissioner's decision.

### STATEMENT OF THE CASE

Mr. Hutto was 41 years old at the time of his hearing before the Administrative

Law Judge ("ALJ"). *Compare* Tr. 54 *with* Tr. 18. He has a high school education. Tr. 34. His past work experience includes employment as a grocery manager, a deli manager, a food products field service representative, and a supermarket clerk. Tr. 49. He claims he became disabled on April 9, 2010, due to limitations imposed by his human immunodeficiency virus (HIV) infection and peripheral neuropathy. Tr. 154. His last period of work ended on that date. *Id.*

On July 6, 2010, Mr. Hutto protectively filed a Title II application for a period of disability and DIB. Tr. 18. On September 15, 2010, the Commissioner initially denied these claims. *Id.* Mr. Hutto timely filed a written request for a hearing on October 4, 2010. *Id.* The ALJ conducted a hearing on the matter on November 18, 2011. *Id.* On December 15, 2011, he issued his opinion concluding Mr. Hutto was not disabled and denying him benefits. Tr. 26. Mr. Hutto timely petitioned the Appeals Council to review the decision on January 5, 2012. Tr. 12-13. On February 28, 2013, the Appeals Council issued a denial of review on his claim. Tr. 1.

Mr. Hutto filed a Complaint with this court on April 29, 2013, seeking review of the Commissioner's determination. Doc. 1. The Commissioner answered on July 31, 2013. Doc. 7. Mr. Hutto filed a supporting brief (doc. 8) on September 13, 2013, and the Commissioner responded with her own brief (doc. 10) on October 29, 2013.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions de novo because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[1] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;

(2)     whether the claimant has a severe impairment;

---

[1]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

(3)     whether the claimant's impairment meets or equals an impairment listed by the Commissioner;

(4)     whether the claimant can perform his or her past work; and

(5)     whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The sequential analysis goes as follows:

Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## ALJ FINDINGS

After consideration of the entire record, the ALJ made the following findings:

1.     Mr. Hutto met the insured status requirements of the Social Security Act through December 15, 2011 – the date of the decision.

2.     He had not engaged in substantial gainful activity since April 9, 2010, the alleged disability onset date.

3.     He had the following severe impairments: human immunodeficiency virus (HIV), hepatitis C, neuropathy, a depressive disorder, and an anxiety disorder.

4.     He did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.     He had the residual functioning capacity ("RFC") to perform sedentary work, as defined in 20 C.F.R. § 404.1567(a) with no climbing of ropes, ladders, and scaffolding and no work at unprotected heights. In addition, he should not operate dangerous, moving, unguarded machinery.

6.     He was unable to perform any past relevant work.

7.     He was born on [redacted] and was 39 years old, which is defined as a younger individual age 18-44, on the alleged disability date.

8.     He had at least a high school education and was able to communicate in English.

9.     Transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that he was "not disabled," whether or not he had transferable job skills.

10.    Considering his age, education, work experience, and residual functioning capacity, there were jobs that existed in significant numbers in the national economy that he could perform.

11.    He had not been under a disability, as defined in the Social Security Act, from April 9, 2010, through the date of this decision.

Tr. 20-26.

**DISCUSSION**

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). However, the court "abstains  from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Mr. Hutto urges this court to reverse the Commissioner's decision to deny his benefits on the basis that the ALJ improperly discredited the opinion offered by Dr. Jon G. Rogers, PhD, a consultative examiner who evaluated Mr. Hutto on September 7, 2010, at the request of the Social Security Administration. The court disagrees and finds that substantial evidence supported this decision. Neither did the ALJ have to re-contact Dr. Rogers for clarification or otherwise develop the record further. Finally, the court finds that substantial evidence supported the ALJ's conclusion as to Mr. Hutto's residual functioning capacity.

**I.      The ALJ Did Not Err in Discounting Dr. Rogers's Opinion.**

Mr. Hutto first argues that the ALJ improperly rejected the opinion of Dr. Rogers. Doc. 8 at 7-12. As noted, Dr. Rogers examined Mr. Hutto on one occasion

7

at the Social Security Administration's request. Tr. 23. In his evaluation, Dr. Rogers noted that Mr. Hutto had never seen a mental health professional before but claimed to be currently experiencing certain diagnostic symptoms associated with depression and anxiety/panic. Tr. 298. Mr. Hutto also reported engaging in the following daily activities: personal hygiene, talking on the phone, laundry, lying around, walking around, and going outdoors when possible. Tr. 299. He had a "few friends with whom he talks on the phone, visits, plays cards, celebrates birthdays, goes out to eat, and goes shopping." *Id.* Dr. Rogers observed that Mr. Hutto's appearance, dress, grooming, hygiene, mood, and conversation were "good" and "normal." Tr. 299-300. The doctor also positively evaluated Mr. Hutto's abilities as to orientation, concentration and attention, memory, fund of information, abstraction, thought process, and judgment and insight. Tr. 300-01.

In concluding his evaluation, Dr. Rogers noted the following "implications for employment":

> Mr. Hutto is able to function independently. The quality of his daily activities is below average. The medical evidence of record provided by [the Disability Determination Service] was reviewed and those findings were considered in the overall assessment of the patient. He presented on this testing occasion stating that he cannot work "because I can only work a little while at a time . . . as the day wears down . . . I'm in pain and weak. We're running out of options with the neuropathy. My feet don't really want to work. There's no feeling in the bottom of my feet." He reported anxiety is a factor in his employability, "makes my feet set off in pain." Medication side effects impair

functioning.

Tr. 301. Dr. Rogers then gave the following diagnostic impression:

| | |
|---|---|
| Axis I | Pain Disorder Associated with Psychological Factors and His General Medical Condition DSM IV 307.89. Depressive Disorder NOS DSM IV 311. Anxiety Disorder NOS DSM IV 300.00. |
| Axis II | No diagnosis |
| Axis III | Dizziness, insomnia, high cholesterol, HIV (diagnosed in 1996), and daily pain (8/10) in his back and neuropathy in his legs. |
| Axis IV | Psychosocial stress stemming from his difficulties in relationship to his occupational problems. |
| Axis V | Global Assessment of Functioning = 50. |

*Id.*

The ALJ adequately summarized Dr. Roger's observations. He correctly noted as well that the American Psychiatric Association defines a GAF of 50 as "consistent with serious symptoms or a serious impairment in social, occupational, or school functioning." Tr. 24.[2] The ALJ further recorded that Dr. Rogers "opined [that Mr.

---

[2] The Global Assessment of Functioning, or GAF Scale, is a numeric scale that mental health physicians and doctors use to rate the occupational, psychological, and social functioning of adults. *The Am. Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 2000) ("DSM-IV"). According to the DSM-IV, a GAF of 50 indicates either (1) "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting)" or (2) "any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.; accord Davis v. Astrue*, 287 F. App'x 748, 758 (11th Cir. 2008) (unpublished) (per curiam) ("[A] GAF of 50 indicates either serious symptoms or serious impairments in social, occupational, or school functioning.").

Hutto's] ability to understand, remember and carry out instructions and respond appropriately to supervisors, co-workers and work pressures in a work setting would be severely impaired." *Id.* However, the ALJ assigned this opinion "little weight" for three reasons:

- Dr. Rogers only examined Mr. Hutto on one occasion and did not treat him regularly;

- Dr. Rogers's assessment was inconsistent with other findings in his report; and

- the assessment was also inconsistent with the level of physical activity Mr. Hutto maintained.

*Id.*

This determination was justified. Unlike that of a treating physician, the opinion of a one-time examiner is not entitled to deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (citing *Gibson v. Heckler*, 729 F.2d 619, 623 (11th Cir. 1986)). Rather, an ALJ may discount such an opinion so long as he or she provides specific reasons for doing so that are themselves supported by substantial evidence. *See Ellison v. Barnhart*, 355 F.3d 1272, 1275-76 (11th Cir. 2003). The ALJ's analysis here met this standard. That is, he was specific in explaining why he discredited Dr. Rogers's opinion and assembled substantial evidence in support of his conclusion. First, the fact that Dr. Rogers examined Mr. Hutto only on one occasion

10

was an acceptable supporting reason for rejecting the doctor's conclusions. By their nature, such consultative examinations can at best provide a snapshot of the patient's condition. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (finding consultative psychologists's solitary examination of claimant to be appropriate reason for ALJ to discredit his assessment).

Substantial evidence also supports the other reasons the ALJ cited to justify his weight designation. The ALJ accurately observed that Dr. Rogers's diagnostic conclusions contradicted the thrust of his report. Tr. 24. The doctor in fact devoted most of his report to presenting how promising Mr. Hutto's condition was. As noted, Dr. Rogers positively evaluated Mr. Hutto's appearance, behavior, mood, speech patterns, and cognitive abilities. Tr. 299-301. Further, although the quality of Mr. Hutto's daily activities was "below average," the ALJ concluded that he was "able to function independently." Tr. 301. Given this depiction, the ALJ reasonably concluded that Dr. Rogers's dire psychological diagnosis was unfounded.

Other parts of the record also undermine Dr. Rogers's diagnosis. The ALJ justifiably referenced Mr. Hutto's failure to seek mental health treatment of any kind in the past. This omission, at the very least, is inconsistent with a destabilizing psychological impairment. Further, the volume and quality of Mr. Hutto's self-reported daily activities undercut such an impairment's existence. As the ALJ noted,

11

Mr. Hutto volunteered that he regularly engaged in the following diversions: caring for numerous pets, playing computer games, mowing grass, shopping, and interacting with his friends. These activities are plausibly inconsistent with a "serious impairment in social, occupational, or school functioning." Finally, Mr. Hutto himself identified his neuropathy as the genesis of his alleged impairments. *E.g.,* Tr. 35-36. His reported anxiety and depression were at most ancillary to his physical condition and only contributing factors hindering his employability.

For all of these reasons, the court finds that substantial evidence supports the ALJ's decision to discredit Dr. Rogers's evaluation of Mr. Hutto's functional abilities.

## II.   The ALJ Had No Further Duty to Develop the Record.

Mr. Hutto next argues that the ALJ should have re-contacted Dr. Rogers for clarification if he found the doctor's opinion materially inconsistent with the record. Doc. 8 at 9. According to Mr. Hutto, the ALJ's failure to do so violated his fundamental duty to develop the record. *Id.* at 10.

This complaint is unfounded. "The regulations pertaining to consultative examinations require the ALJ to re-contact a consultative examiner only if [the examiner's] report is <u>inadequate or incomplete</u>." *Sumerel v. Colvin*, 2014 U.S. Dist. LEXIS 51108, at *14-15 (N.D. Ala. Apr. 14, 2014) (emphasis added) (citing 20

C.F.R. §§ 404.1519p(a)-(b); 416.919p(a)). Here, Mr. Hutto does not allege – much less show – that Dr. Rogers's evaluation was inadequate or incomplete. He instead contends (or at least concedes for the sake of argument) that the report was internally and externally inconsistent. *See* Doc. 8 at 9. Inconsistency, however, is not a ground for reestablishing contact. *See McLamb v. Astrue*, 2013 U.S. Dist. LEXIS 106929, at *14-15 (N.D. Ala. July 31, 2013) ("[T]he ALJ had no obligation to contact Dr. Menzel for further clarification. Plaintiff's argument would only be persuasive if the meaning of Dr. Menzel's opinion was unclear . . . the problem is not a lack of clarity but that [the doctor's] opinion is at odds with the rest of the evidence.").

Nor did the ALJ have any further duty to develop the record. As a general matter, Social Security proceedings "are inquisitorial rather than adversarial.*" Sims v. Apfel*, 530 U.S. 103, 111 (2000). The ALJ thus has the duty "to investigate the facts and develop the arguments both for and against granting benefits." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 400-01 (1971)). The ALJ's duty to "fully and fairly develop the record," *Coward v. Schweiker*, 662 F.2d 731, 735-36 (11th Cir. 1981), exists whether or not the applicant is represented. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995). When the claimant is unrepresented, however, the ALJ's duty is heightened. *See Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982). Mr. Hutto was legally represented in his hearing below. Tr. 31. Thus, the ALJ had no

special duty to "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." *Id.* (emphasis added).

Still, an ALJ must "develop the claimant's complete medical history for at least the 12 months preceding the month in which the application was filed, and to make every reasonable effort to help a claimant get medical reports from the claimant's own medical sources when permission is given." *Robinson v. Astrue*, 235 F. App'x 725, 727 (11th Cir. 2007) (unpublished) (citing 20 C.F.R. § 416.912(d)). "Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam).

The record shows that the ALJ here met these basic obligations. He fielded and reviewed treatment records dating back to at least 2007 from Dr. Amy Carter, M.D., and the Davis Clinic, both of whom aided Mr. Hutto with his neuropathic pain. Tr. 22-23. The ALJ also examined consultative physical and mental evaluations that the Social Security Administration independently ordered after Mr. Hutto's disability application. Tr. 23-24. Finally, the ALJ assessed determinations made by separate state agency personnel after reviewing the record evidence on Mr. Hutto's claimed physical and mental impairments. Tr. 24.

In short, the ALJ comprehensively developed the record. Moreover, apart from

14

his complaints regarding the treatment of Dr. Rogers's report, Mr. Hutto does not specify how the ALJ supposedly failed his duty. The court thus finds that this argument lacks merit.

## III.   Substantial Evidence Supports the ALJ's RFC Determination.

Beyond the specific matters addressed by the parties in their briefing, the court more generally finds that substantial evidence supports the ALJ's RFC determination. The ALJ concluded that, despite his impairments, Mr. Hutto could still perform sedentary work with certain limitations. Tr. 21. The Regulations define sedentary work in the following manner:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). Mr. Hutto primarily argues that disabling neuropathic pain prevents him from being able to perform work of any kind. The court will thus examine whether the ALJ properly evaluated Mr. Hutto's pain-based allegations under the prevailing standards in this Circuit.

A claimant who seeks "to establish a disability based on testimony of pain and other symptoms" must show the following:

- Evidence of an underlying medical condition; and

- Either:

  ▸ objective medical evidence confirming the severity of the alleged pain; or

  ▸ that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citation omitted). An ALJ must articulate "explicit and adequate reasons" in order to discredit subjective testimony. *Id.* (citation omitted). Failure to do so "requires, as a matter of law, that the testimony be accepted as true." *Id.* (citation omitted). However, the ALJ does not need to "specifically refer to every piece of evidence in his decision," so long as the decision shows that the ALJ considered the claimant's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (citation omitted).

The ALJ here was both explicit and convincing in explaining why he did not credit Mr. Hutto's testimony regarding the disabling effects of his pain. The ALJ first emphasized the manifold activities Mr. Hutto engaged in on a daily basis. As previously noted, these include performing personal care, preparing meals, doing laundry, washing dishes, riding the lawn mower, periodically driving, and shopping in stores. The ALJ reasonably found that this level of functioning undercut Mr. Hutto's claims of disabling pain. Tr. 22.

16

Moreover, the ALJ's survey of the medical record evidence revealed that Mr. Hutto's neuropathic pain – while a relatively constant reality – was not totally disabling. The ALJ examined the progress notes submitted by Dr. Carter, who treated Mr. Hutto from at least fall 2007 through summer 2010. Tr. 209-237. Dr. Carter noted that Mr. Hutto suffered increased pain in his feet in November 2009, pain which stress apparently aggravated. Tr. 222. However, the ALJ reasonably inferred that these notes did not indicate a significant diminution of his functional capacity. Tr. 23. Other evidence further suggested that Mr. Hutto's medication tempered his symptoms. In May 2010, his nurse at the Davis Clinic awarded him a 90 on the Karnofsky scoring scale. Tr. 289. This score reflected "minor symptoms of a disease present" and "no interference in function due to disease symptoms." *Id.* Finally, in follow-up records dated October 12, 2011, Dr. Theodore Mengesha, M.D., opined that Mr. Hutto's pain was "pretty much more or less controlled with medication." Tr. 356.

Altogether, the ALJ marshaled "such relevant evidence as a reasonable person would accept as adequate to support [his] conclusion." *Bloodsworth*, 703 F.2d at 1239. In concluding that Mr. Hutto could perform sedentary work with certain defined limitations, the ALJ aptly rejected the state agency single decisionmaker's opinion that Mr. Hutto could perform at the light level of exertion. The ALJ instead

17

crafted a RFC substantially supported by the record.

### CONCLUSION

Based upon the court's evaluation of the evidence in the record and the parties' submissions, the court finds that the decision of the Commissioner is supported by substantial evidence and that she applied proper legal standards in arriving at it. Accordingly, the decision will be affirmed by separated order.

**DONE** and **ORDERED** this the 8th day of July, 2014.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

18